CASE 58—PETITION EQUITY—MARCH 26.

# Avery & Sons v. Meikle & Co.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. TRADE-MARK.— Where a manufacturer so closely imitates the goods of another as to destroy the efficacy of the latter's trade-mark, and deceive the public, there is as much a violation of the rights of property in the trade-mark as if the trade-mark itself had been used.

2. SAME—DAMAGES.—Where one's trade-mark has been appropriated by another, or his goods have been so closely imitated as to destroy the efficacy of his trade-mark, he may elect whether he will claim damages against the wrong-doer, or require him to account for profits; and if, in an action in equity to restrain the wrong-doer, he elects to take the profits, the chancellor will not require him to show *affirmatively* that he has been damaged, but will assume as a matter of law that those purchasing the counterfeit would have been the purchasers of the plaintiff but for the simulation. And even though the plaintiff may in such an action have claimed " damages," this will not preclude

him from electing to take the profits, which is in fact the true crite-
rion of damages, *no other special injury being alleged or claimed.*

This court, upon a former appeal in this case, held that the defend-
ants had, without using the trade-mark *proper* of the plaintiffs, so
simulated the plaintiffs' plows by using the same letters and numerals,
and the same coloring and staining, as to deceive the public, and that
the plaintiffs were, therefore, entitled to an injunction, restraining
the defendants from selling their plows as the plows of plaintiffs, and
the case was remanded for further proceedings. Upon the return of
the case to the lower court the plaintiffs asked for a reference to a
commissioner, with directions to hear proof and take an account of
profits, which the court refused. *Held*—That the case should go to
the commissioner with directions to ascertain the number of simulated
plows sold by the defendants after the simulation became complete,
and the amount realized for them, the net profits to be ascertained by
deducting from this sum the actual cost of making the plows, includ-
ing the cost of material, value of use of machinery, hire of employes,
and value of the labor and superintendence of the work by the de-
fendants themselves, and deducting also the expenses of advertising
and selling.

3. SAME—LACHES.—This imitation by the defendants was begun first in
November, 1878, but not completed until in 1879. About five or six
months after it was made complete, and fourteen months after it was
begun, the plaintiffs instituted this action. *Held*—That there was no
such *laches* by plaintiffs as to deprive them of the right of an account-
ing of profits, and would have been none had the simulation been
complete in November, 1878.

4. SAME—INTEREST.—Even if it is to be regarded as the general rule to
allow interest on the profits, there are circumstances in this case which
authorize the chancellor to withhold interest.

W. O. & J. L. DODD FOR APPELLANTS.

1. The opinion delivered by this court upon the former appeal in this case
settles the appellants' right to the recovery of some damages, and, as
we think, to an amount at least as much as the profits which resulted
to and were realized by appellees from their manufacture and sale of
the pirated articles. (81 Ky., pp. 73 to 116.)

2. Where relief is sought by an injunction and an account in the same
action in which an infringement has been found and decreed, whether
of the technical trade-mark proper or of its auxiliaries, the complain-
ant is entitled to a reference to a master and an accounting, and the
universal guide or measure of damages in such equitable actions is the
profits realized by the infringer or wrong-doer, or which he reasona-
bly ought to have made on the simulated articles manufactured and
sold by him. (Amoskeag Manufacturing Co. v. Spear, Cox's Am.

Avery & Sons v. Meikle & Co.

Trade-mark Cases, 93; Browne on Trade-marks, secs. 502, 503, 506 and 507; Sutherland on Damages, vol: 3, p. 630; Upton on Trade-marks, chap. 5, pp. 202 to 246; Graham v. Plate, 40 Cal., 593; Burdell v. Denig, 92 U. S., 716; Birdsall v. Coolidge, 93 U. S., 69; Rubber Co. v. Goodyear, 9 Wal., 804; Mowry v. Whitney, 14 Wal., 653; Parks v. Booth, 102 U. S., 106; American Tube Works v. Bridgewater Iron Co., 26 Fed. Rep., 324; Sawyer v. Kellogg, 9 Fed. Rep., 601; also 7 Fed. Rep., 720; Hostetter v. Adams, 10 Fed. Rep., 838; Sawyer v. Horn, 1 Fed. Rep., 24; Collins v Ames, 18 Fed. Rep., 561; Holt v. Menendez, 23 Fed. Rep., 869; Coats v. Holbrook, 2 Sandf. Ch'y, 611; Hostetter v. Vowinkle, 1 Dill., 329; Taylor v. Carpenter, 2 Wood & M., 1; Taylor v. Carpenter, 11 Paige, 292; also, 2 Sandf. Ch'y, 603; Gillott v. Esterbrook, 47 Barb., 455; and Cox's Am. T. M. Cases, 340; Root v. Railway Co., 105 U S., 214; Wintermute v. Redington, 1 Fisher Pat. Cases, 239; Serrell v. Collins, *Ib.*, 290; Paige v. Ferry, *Ib.*, 299; Bell v. Daniels, *Ib.*, 372.) Cases commented on : Leather Cloth Co. v. Hirschfield, 1 L. R. Eq. Cases, 299; Leather Cloth Co. v. Am. Leather Cloth Co., 11 H. L. C., 523; Peltz v. Eichele, 62 Mo., 171.

3. The delay of appellants in asserting their claim was not unreasonable. (McLean v. Fleming, 96 U. S., 257; Sawyer v. Kellogg, 9 Fed. Rep., 601; Taylor v. Carpenter, Cox's Am. T. M. C., 35; Amoskeag Manufacturing Co. v. Garner, Cox's Am. T. M. Cases, 280; Del. and Hud. Canal Co. v. Clark, 7 Blatch., 112; Holt v. Menendez, 23 Fed. Rep., 869; Rogers v. Philps, Cox's Am. T. M. C., p. 200.)

But, so far as this case is concerned, the question of delay was settled by this court against appellees on the original appeal.

4. This is a trade-mark case, and as such must be controlled by the rules and principles of law applicable to other trade-mark cases. (81 Ky., pp. 105 and 106; Morgan v. Troxell, 23 Hun., 639.)

JOHN MASON BROWN ON SAME SIDE.

1. Under the reservations in our Code an action such as this *must be equitable* (Code, sec. 6), for it is an equitable action. as the law was prior to August, 1851. The bill for injunction and account of profits has ever been a strictly equitable proceeding.

2. Where our Code of Practice prescribes that certain classes of actions *must be equitable*, it necessarily results that in all that goes to jurisdiction, to preparation, to matters of practice, to powers of the court, and to forms and scope of decrees of relief and the enforcement of decrees, the precedents of chancery are to control.

3. In such cases as this the option is given the plaintiff to take the "profits" realized by the defendant, or to claim "damages" and prove the actual damage sustained by him. The choice is for him. It is not for the court to decide which he shall take. His demand for

an account of profits is an election to take them, and when once he elects to take profits or even ask an account of profits, he is precluded from thereafter demanding any actual damages beyond such profits. (Root v. Railway Co., 105 U. S., 207; Hipp v. Babin, 19 How., 271; DeVitria v. Betts, Law Rep., 6 H. of L., 319.)

Appellants have long since made this election and demanded the account.

4. A decree perpetuating the injunction and ordering further proceedings imported and necessitated the ascertainment of profits realized by the wrong-doer and their payment to the injured party, if he should choose to take them as his compensation.

HARGIS & EASTIN on same side.

1. This is a trade-mark case; and the fact that appellants' trade-mark was infringed by appellees has been judicially settled. (Avery & Sons v. Meikle & Co., 81 Ky.; Browne on Trade-Marks, secs. 137, 418 and 419; Mitchell v. Henry, 15 Ch. D., 181.)

2. This is not an action of deceit at law or confined to its particular limits. (Chitty's Pleadings, p. 137; Browne on Trade-Marks, sec. 451; Bouvier's Law Dictionary, title Deceit.)

3. The measure of damages in this case is, at the election of appellants, the profits made by appellees through their sales of the counterfeit plows, and interchangeable plow-points. (Root v. Railway Co., 105 U. S., 207; Parrott v. Palmer, 3 Myl. & K., 632; Hipp v. Babin, 19 How., 271; Browne on Trade-Marks, secs. 395, 467, 502, 503, 506, 507, 517; Upton on Trade-Marks, p. 245; Sutherland on Damages, pp. 630-635; Marsh v. Billing, Cox's T. M. C., 128; Taylor v. Carpenter, 2 Woodb. and M., 1; Guym v. Sewell, 1 Blatch., 244-5; Faber v. Hovey, Cox's Manual, p. 272; Note on Graham v. Plate, *Ibid.*, p. 198; Estes v. Leslie, Fed. Rep. for May, 1886, p. 24; McLean v. Fleming, 96 U. S., 257.)

Cases commented on: Dobson and another v. Hartford Carpet Co., and Same v. Bigelow Carpet Co., 114 U. S., 439.

MUIR & HEYMAN on same side.

Brief not in record.

JAMES S. PIRTLE, WM. LINDSAY, GEORGE M. DAVIE for APPELLEES.

1. The carefully prepared commissioner's report, sustained by the court below, is correct in finding that there is no evidence to show that the plows of Meikle & Co. have in fact deceived any person into buying any one of them as or for the make of Avery. All the inferences and dicta contained in the opinion on the former appeal have been

Avery & Sons v. Meikle & Co.

demonstrated by the evidence, and by the commissioner's report, to be unfounded. And though that former opinion be taken as the law of this case, yet it is so inconsistent with the facts now in the record, and so unsound in law, that it should be limited, as far as possible, in its injurious consequences. (Avery v. Meikle, 81 Ky., 81.)

2. The court below rightly decided that Avery was not the originator of, and had no exclusive rights to, the shapes, sizes, construction, coloring or numbering of the plows; but had only the right to enjoin Meikle & Co. from making plows of such size, structure and general appearance as might tend to deceive Avery's customers into buying them as and for Avery's make. (Candee v. Deere, 54 Illinois, 439; Manufacturing Co. v. Trainer, 101 U. S., 54; Stokes v. Landegraff, 17 Barbour, 608; Ayer v. Rushton, 7 Daly, 9; Caswell v. Davis, 58 New York, 223; Blackwell v. Wright, 73 N. Car., 315; McGee v. LeBaron, 127 Mass., 120; Canal Co. v. Clark, 13 Wallace, 311; Rogers v. Rogers, 53 Connecticut, 121.)

3. The court below rightly held that no injunction should go against Meikle & Co. making and selling, or branding "A O," "B O," "1," "2," &c., on interchangeable plow points, to supply the place of worn out plow points on the plows of Avery, Meikle and others. (McGee v. LeBaron, 127 Mass., 120; Fairbanks v. Jacobus, 14 Blatchford, 339.)

4. It is difficult to arrive at the exact meaning of the opinion on the former appeal; but the court below correctly interpreted it to mean that no property-right of Avery in any trade-marks had been taken; but that Meikle & Co., while leaving Avery's trade-mark untouched, had so shaped and branded their plows as to destroy the efficacy of Avery's trade-mark, and thus threaten and facilitate deceits upon Avery's customers; and that an injunction was proper to prevent the carrying into effect the threatened and intended deceits. If this interpretation by the court below be correct, there could be no damages awarded, unless Avery had shown that the threatened deceits had been in fact perpetrated. As the court below properly found, from the evidence, that there were no deceits in fact perpetrated, the judgment for one cent nominal damages was correct. (Sutherland on Damages, vol. 3, 594; Walker on Patents, section 565; Blofield v. Payne, 4 Barn. & Ald., 410.)

5. There being no evidence in the record to show that any person who bought the cheaper Meikle plow wished to buy the higher priced Avery plow, the law will not presume that those who bought Meikle's plows would otherwise have been Avery's customers. There being a large number of plow-makers selling plows of this class in competition with Meikle and Avery, there is no presumption that Avery would have solicited or sold to any particular ones; and, therefore, no loss to Avery is established. (Leather Cloth Co. v.

Hirschfield, Law Reports, 1 Equity, 298; Abbott's Trial Evidence, 761; Simonds on Patents, 279; Walker on Patents, sections 563, 565; Sutherland on Damages, vol. 3, 632; Seymour v. McCormick, 16 Howard, 490; Philip v. Nock, 17 Wallace, 460; Peltz v. Eicherle, 62 Mo., 171.)

6. Avery cannot claim both damages and an account of profits. The two are inconsistent, and he must elect; and having elected, he cannot recede. (Neilson v. Betts, Law Reports, 5 English and Irish Appeals, 22; DeVitria v. Betts, Law Reports, 6 English and Irish Appeals, 321; Browne on Trade-Marks, section 506; Law Reports, 1 Equity, 299.)

7. If it be held that Meikle & Co. used Avery's trade-marks, and that Avery can claim profits; he cannot claim the entire profits derived from the manufacture and sale of Meikle's plows, but only the additional profits which he can show that Meikle derived by reason of the use of Avery's trade-marks. There being no evidence to show that any portion, or what portion, of Meikle's profits are due to the addition of Avery's trade-marks, and Avery having failed to furnish evidence to separate and apportion what profits were derived from the plow itself, and what from the trade-mark, there was properly allowed only a nominal recovery. (Atlantic Co. v. Rowland, 27 Federal Reporter, 24; Dobson v. Hartford Carpet Co., 114 U. S., 443; Garretson v. Clark, 111 U. S., 120; Faulks v. Camp, 10 Fed. Reporter, 675; Kirby v. Armstrong, 5 Fed. Reporter, 801; Schillinger v. Gunther, 15 Blatchford, 303; Ingersoll v. Musgrove, 14 Blatchford; Blake v. Robertson, 94 U. S., 728.)

8. Avery stood by for five or six years, seeing a large number of plow-makers all over the south making and selling plows branded as Meikle's were, and stood silent for over a year after Meikle commenced making them and spending large sums in erecting a manufactory, advertising, &c.; and then sued, without first notifying Meikle of any objection to his use thereof. This was such laches, that equity, though giving an injunction, will refuse to give damages, or an account of profits. The fact that Avery did not complain earlier showed that he was not suffering damage. (McLean v. Fleming, 6 Otto, 266; Browne on Trade-Marks, sec. 497; Harrison v. Taylor, Cox's Trade-Mark Cases, 675; Amoskeag Co. v. Garimer, Cox's Cases, 549; Beard v. Turner, Cox's Cases, 717; Sawyer v. Kellog, 9 Fed. Reporter, 602.) Nor should interest be charged against Meikle. (Parks v. Booth, 102 U. S., 106; Walker on Patents, sections 736, 738; Sutherland on Damages, vol. 3, page 606.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

The original action was instituted in the court below by the present appellants, and an injunction obtained,

restraining the appellees from the use of appellants' trade-mark upon certain plows, and to prevent them (the appellees) from selling their plows as the plows of the appellants. The chancellor below having denied the relief, his judgment was reversed, this court, upon the hearing, holding, that while the appellees had not used the *trade-mark proper* of the appellants, they had so arranged or placed the letters and numerals used by the appellants on their plows, the plows of the appellees, and with the same coloring and staining had so simulated their manufacture, as to cause their plows to be taken and sold as those made by the appellants, and that an intentional violation of the latter's right of property was in this way made to deceive the public, and to enable the appellees to sell their manufactures as those of the Averys, the appellants.

This court said : "By skillful combination of legal particles, taken one at a time, and in the aggregate leaving the mere trade-mark untouched, they have so confused its force and effect as to destroy its office and real efficiency to distinguish appellants' plows from all others." (Avery & Sons v. Meikle & Co., 81 Ky., 113.)

The right of the appellants to an injunction was finally determined, and the case remanded for further proceedings.

On the return of the case to the lower court, the appellants asked for a reference to the commissioner, with directions to hear proof, and state an account of damages between the parties by reason of the wrongful acts of the appellees. That the appellees be compelled to state the number of plows that had been thus simulated by them that were sold, and the profits made

on the sales, and that they be compelled to produce their books, etc.

The court declined to make such an order, and the case having been transferred to the Law and Equity Court, that court refused to instruct the commissioner to report what profits the defendants (appellees) had made, but held that as the infringement of the property right had been committed by other means than the appropriation of the trade-mark itself, it was essential in equity as well as at law to show the fraudulent intent, and, therefore, the profits made by the appellees should not be the measure of damages, but the actual injury sustained by the appellants.

Under this view of the law as held by the chancellor, and followed by the commissioner, the appellants were only entitled to recover where the proof showed that the plows of Meikle & Co. had been actually sold as the plows of the Averys, and their being a failure in this respect, the damages were merely nominal, and no recovery except for nominal damages was allowed.

The appellants maintain, as this court had determined that the simulation was intentional, the wrongful appropriation of this property right of the appellants was consummated when their plows were sold by the appellees or their agents, and the profits realized constituted the criterion of damages in equity, when no special damage was alleged or claimed by the appellants; while, on the other hand, the appellees insist that it was a mere tort, and the inquiry is limited to cases where the appellees have, in selling their plows, represented them in fact to be the plows of Avery. This is the real and only issue involved in the appeal.

We do not understand that, in order to constitute a violation of the right of property in a trade-mark, it is necessary the trade-mark itself should be imitated, but where the simulation in every other respect is so made as to destroy the efficacy of the trade-mark, and to deceive and induce others to believe that the manufactured article is that of the real owner of the trade-mark, it then becomes as much a violation of the right of property as if the trade-mark itself had been appropriated. Such was the decision in this case on the former appeal, and the intention on the part of the appellees in violating this right of the appellants was then finally determined. The fraudulent intent with which the simulation was made having been already adjudged, it was not necessary, on the return of the case to the lower court, for the commissioner, under an order of reference, to hear, or the appellants to offer, proof on that subject; but a simple reference to the commissioner to state an account of profits upon proof adduced, which, when correctly ascertained, would give to the appellants all the relief to which they were entitled.

In compliance with this order, the commissioner could call on the appellees to disclose the number of plows sold and the profits made, or appellants could establish the profits, if any, in some other mode. To require the appellants to show an actual fraudulent representation made by the appellees to those who purchased their plows would be impracticable, and result in permitting the wrong-doer to appropriate the property of another to his own use without rendering an account, as he would scarcely say to the purchaser, *these plows I am*

*selling were made by the Averys.* The law makes this representation for him when he has imitated the manufactured article that he is selling so as to destroy the trade-mark, and enable him to sell it as the product of another.

While the profits made by the wrong-doer are not, in a technical legal sense, to be termed *damages*, still many of the text-books, as well as some of the reported cases, in fixing the *measure of damages* in a court of equity in a case like this, say that the plaintiff is entitled to the *profits*, but not so at law; he may there recover more or he may recover less than the profits realized. The fraud does not prevent a recovery of the profits in equity, as the plaintiff may not ask for more or be satisfied with less. Mr. Upton, in his work on Trade-marks, in discussing the rights of the plaintiff in a case like this, says : " It is a violation of the right of property in a trade-mark, which, upon the principles established as the basis of the protection which the law extends to such property, will be suppressed by the extraordinary powers of a court of equity, and its fruits intercepted and restored." (Page 214.) An example is given in this work of a case analogous in almost every feature to the one before us, where, to use the language of the author, "an elaborate simulation had been made, not to communicate the truth, but to escape the penalty of a falsehood."

In appropriating this trade-mark by such a close imitation as to render it difficult for an ordinary observer to distinguish the one plow from the other, and then disposing of the plows to the public, the appellees, according to a well-settled rule of equity, have applied

the profits to their own use that justly belonged to the appellants, and it is not necessary to inquire, nor will the chancellor stop to inquire, whether or not the appellants could have sold their plows to the same parties. The trade-mark is his property; the manufacture the result of his skill, and when one undertakes by coloring, painting and so arranging his manufacture as enables him to virtually destroy the trade-mark of another and to sell his own as the product of the skill of the real inventor, it is as much a violation of the right of property in the trade-mark as if the trade-mark itself had been used. The appellants' trade-mark is a Maltese cross, with the name or letters A. V. E. R. Y. distributed in its arms and center. It is not pretended that this trade-mark appeared on the plows made and sold by the appellees, but the imitation in every other respect is complete, and, as was heretofore decided, made with the intent to invade the right of property in the trade-mark of the appellants. If so, the appellants are entitled to an account of profits. It has, in effect, destroyed the trade-mark, and enabled the one to sell his plows as the manufacture of the other.

This is not an action for damages by the Averys against Meikle & Co., by reason of the latter selling their plows as the plows of Averys. If so, the ordinary rule in regard to the measure of damages resulting from the tort would apply. It is an action in equity to restrain the appellees from the use of appellants' trade-mark, and from making and selling plows which by certain devices and colorable imitation have been made to represent the plows of Avery & Co., and thereby destroyed their trade-mark or the right of property in it.

It is a matter of doubt whether the averments con-
tained in their equitable action are sufficient to make
it a good petition at law as an action on the case, the
prime object being the injunction to prevent the wrong;
and when having the jurisdiction the chancellor will
order an account of profits. The rule as to the measure
of damages, or the relief to which the plaintiff is ordi-
narily entitled in such a case as this when in a court of
equity, is to give as damages the amount of profits the
defendant made by reason of his wrong. The rule gen-
erally recognized as the true one is to give as damages
the amount of profits the defendant shall have made by
the infringement. (Browne on Trade-Mark, section
507.)

In this case it has been adjudged that the imitation
was made with the design on the part of the appellees to
make profit by the deception, and we perceive no reason
why the appellants should not have the profits, if they
claim nothing more. This court cannot now, if so dis-
posed, reconsider the question heretofore determined by
requiring the plaintiffs to establish a deception that has
already been adjudged to exist. In equity the wrong-
doer is treated as a trustee in respect to the property,
and is considered as holding the profits for the rightful
owner. This rule applies as to patents, and the element-
ary authors on the subject say: "In trade-mark cases the
rule is much the same, but in the latter considerations
are involved which do not enter into ordinary patent in-
fringements, as, for example, loss of reputation, so that
courts allow greater scope in ascertaining damages."
(Brown on Trade-Marks.) "In equity," says Mr. Suth-
erland in his work on Damages, "where there is ground

for invoking its jurisdiction, and an infringement has
been found and decreed, and there has been no unreason-
able delay in commencing suit, an account of profits
will be decreed, which means the net profits the in-
fringer has actually realized." (Vol. 3, p. 631.) Mr.
Upton on Trade-Mark says: "The order usually made
by courts of chancery, that the defendant keep an ac-
count of the sales made by him, to the end that he
pay over the plaintiff the profits resulting from such
sales, would seem to indicate a rule." (P. 245.) While
this author questions the wisdom of the rule, he sub-
stitutes no other for the guidance of the chancellor;
and certainly, where the intention to violate appears,
and the party charged is acting *mala fides*, he should
not be heard to object to an account of profits. The
Supreme Court, in the case of Root v. Railway Co.,
105 U. S., 189, said: "When, however, relief was
sought which equity alone could give, as by way of
injunction to prevent a continuance of the wrong, in
order to avoid a multiplicity of suits, and to do com-
plete justice, the court assumed jurisdiction to award
compensation for the past injury, not, however, by
assessing damages, which was the peculiar office of a
jury, but by requiring an account of profits, on the
ground that if any had been made it was equitable to
require the wrong-doer to refund them, as it would be
inequitable that he should make a profit out of his own
wrong."

In the same case, citations are made from the opin-
ions of Vice Chancellor Wigram, in Colburn v. Sims,
2 Hare, 543, and of Sir J. Leach, in Bailey v. Taylor, 1
Russ. & M., 329. In Colburn v. Sims, it is said : "The

court does not accurately measure the damage, but as the nearest approximation it can make to justice, takes from the wrong-doer all the profits he has made by his piracy, and gives them to the party who has been wronged."

In Bailey v. Taylor, the ground for relief is laid down by the Master of the Rolls as follows: "The court (alluding to a court of equity) has no jurisdiction to give to the plaintiff a remedy for an alleged piracy, unless he can make out that he is entitled to the equitable interposition of this court by injunction; and in such case the court will also give him an account, that his remedy here may be complete. If this court do not interfere by injunction, then his remedy, as in case of any other injury to his property, must be at law; unless that primary right to an injunction exists, this court has no jurisdiction with reference to a mere question of damages."

In the case of Graham v. Plate, 40 California, 593 the question as to the measure of damages was carefully considered, and hence has become a leading case. It was there argued that the entire profit should not be held to have originated from the wrongful use of the trade-mark, but that the intrinsic value of the article sold should enter into the question of value and thereby lessen the profits. The court, in response, said: "Every consideration of reason, justice and sound policy demands that one who fraudulently uses the trade-mark of another should not be allowed to shield himself from liability for the profit he has made by the use of the trade-mark, on the plea that it is impossible to determine how much of the profit is due to the trade-

Avery & Sons v. Meikle & Co.

mark, and how much to the intrinsic value of the commodity. The fact that it is impossible to apportion the profit, renders it just that he should lose the whole."

The case of the Leather Co. v. Hirschfield, Law Reports, 1 Equity, 298, claimed by counsel for the appellees to be analogous to this case, was where the plaintiff sued in equity as here, but elected not to take an account of the profits to which, by the decision in that case, he was entitled, but elected to claim damages by reason of the invasion of his right; and having done so, it was held that the burden was on him to show the extent of his injury, and the court would not assume as a matter of law that those purchasing of the defendant the simulated goods would have been the customers of the plaintiff.

The appellants in this case did elect to have an account of profits, and asked for a reference that such an account might be taken. The fact that they claimed damages did not preclude them from electing to take the profits. This was, in fact, the true criterion of damages in equity, where no other special injury was alleged or claimed. In fact, the cases of Neilson v. Betts, 5 English & Irish Appeal Cases, 1, and De Vitre v. Betts, 6 English & Irish Appeals, 319, referred to by counsel, establishes the rule that there can not be an inquiry as to damages and also an account of profits. The plaintiff is not entitled, as said in those cases, "to an account of profits, and also an inquiry as to damages. That principle applies generally, and without any distinction at all. It applies to every case of infringement, and, therefore, it must be taken to have

vol. 85.—29.

settled conclusively that point, that the patentee must, in all these cases, when he has a decree, elect whether he will have an account of profits or an inquiry as to damages. He can not have both."

In this case the chancellor refused to permit the plaintiffs to elect, but compelled an inquiry as to the entire damage the plaintiff had sustained when he was not asking for it. It is true, the appellants asked for damages in their equitable action, but this did not confine them to such damages as a jury could give in an ordinary action for fraud. The chancellor should have said, all I can give you in the way of compensation is an account of profits. You may elect to claim such damages as you have sustained, or take an account of profits. The plaintiffs asked for an account of profits. They claimed nothing more. We have found no case, and been cited to no authority, where there has been a violation of the trade-mark, and an injunction granted, where the party wronged has been refused an account of profits, unless he had first elected to claim the actual damages he had sustained, or delayed the assertion of his claim. In the case of Dobson v. Hartford Carpet Co., 114 U. S., 439, a case, however, unlike this, the plaintiff declined to take an account of profits.

In an action at law the measure of damages would be as insisted on by counsel for the appellees, and the authorities adduced in support of their views all conduce to sustain the jurisdiction of a court of equity, and the right of the appellants to an account of profits.

The plaintiff here had obtained his judgment or decree, restraining the defendant from a further invasion of his right. It was adjudged that he had violated

the rights of the plaintiff by appropriating his right of property to his own use, and the only question left for future consideration was the damages sustained. The plaintiff says, my damages in the forum I have elected to grant the relief sought, is the net profits the appellees have realized by reason of their wrong. To these profits he is entitled.

This is the doctrine of the text-books, and approved by the reported cases referred to by counsel on either side : "The net profits may be recovered in equity as profits made by the use of the plaintiffs' property, and the defendant, as a constructive trustee, compelled to account for them. But at law only damages can be recovered, and they will be measured by the plaintiffs' loss and not the defendants' gain." (Sutherland on Damages, volume 3, page 631.)

The rule laid down by Sutherland, and clearly stated, is the correct doctrine as to the criterion of damages, and while that general rule may not be applied to every case where there is an intentional appropriation by the one of the other's property by the use of the latter's trade-mark, or so simulating the manufacture of one as to make it resemble that of the other, so as to destroy the property in the trade-mark, we perceive no reason for denying an account of profits. The aid of a court of equity has been invoked to prevent the further appropriation of the plaintiffs' right of property to the use of the defendants. That relief has been granted, and the chancellor, at the instance of the plaintiff, will require the trustee to settle his accounts and account for the profits. The defendants occupy, in fact, the relation of trustees to the plaintiffs. The latter are the beneficiaries.

It is this principle, long recognized by courts of equity, that enables the chancellor to adjust the accounts between the parties, and give to the complainant that character of relief that he could not obtain in a common law court.

It is also urged by counsel for the appellees that the appellants have been guilty of such laches in the prosecution of their claim for profits as precludes the chancellor from giving any such relief. The imitation in this case began first in the month of November, 1878, but was not made complete until some time in 1879; then the precise similitude appeared, and in some five or six months thereafter this action was instituted. So there was no laches on the part of the appellants, and would have been none if the similitude had been complete in the month of November, 1878, for then only fourteen months would have elapsed between the commission of the wrong in the first place and the bringing of the action.

Whether a lapse of time of less than five years would constitute a bar to the recovery of profits in equity is not necessary to be decided. There might be such an acquiescence on the part of the plaintiff as would amount to consent or work an equitable estoppel, but we find no such case presented by this record.

This case should, therefore, go to the commissioner, with direction to ascertain the number of simulated plows sold by the appellees from the time the simulation become complete, which was in the beginning of the fall of 1879, and the amount realized for them; the actual cost of the material used in the manufacture; the cost, which includes the hire of the employes in

making the plows, allowing the use of the value of the tools, machinery, power, and other facilities necessary for the manufacture ; expenses of selling and advertising ; the value of the labor and superintendence of the work by the appellees themselves. These items, deducted from the amount realized from the sales, will leave the net profits, if any. If no profits, the damages are nominal only, as an election to take the profits has been made.

In some instances interest has been allowed on the profits to the plaintiffs, but there are facts and circumstances existing in this case that authorize the chancellor to withhold interest, if such is to be regarded as the general rule.

For the reasons indicated the judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.