OSCAR P. BEEBE, Appellee, v. TOLERTON & STETSON CO., Appellant.

Counterfeiting Label: INJUNCTIONS. Even if Code, section 5050, authorizing an action to enjoin use of a counterfeit of a label, applies only where defendant knows it is a counterfeit, injunction may be granted where defendant, after being informed of the counterfeit, delivers goods, previously sold, bearing the label.

STATUTE CONSTRUED: *Constitutionality—title*. The title of Acts 24th General Assembly, chapter 36, "An Act to Protect Persons * * * In Their Labels, Trade Marks and Forms of Advertising," is sufficiently comprehensive to embrace the remedy by injunction, the recovery of damages, the recovery of profits, as a penalty, and of an attorney's fee.

VOL. 117 IOWA.—38.

RECOVERY OF DAMAGES: *Evidence*. Under Code, section 5050, authorizing a judgment, in action to enjoin use of a counterfeit label, of damages resulting from the wrongful use thereof, and that defendant pay the profits derived from such use, there must be proof of damages or profits to authorize a recovery on account thereof.

ATTORNEY FEE PROVIDED BY STATUTE. An allowance of $250 is reduced to $150.

*Bad faith to be shown.* To authorize recovery for profits under Code, section 5050, providing for the recovery of profits derived by defendant from use of a counterfeit label, it must be shown that he acted in bad faith.

*Appeal from Woodbury District Court.*—HON. GEO. W. WAKEFIELD, Judge.

FRIDAY, OCTOBER 17, 1902.

SUIT in equity to enjoin defendant from using a counterfeit label on cigars sold by it. Decree for plaintiff, and defendant appeals.—*Modified* and *affirmed*.

*Shull & Farnsworth* for appellant.

*Quick & Carter* for appellee.

DEEMER, J.—Plaintiff, as a member and president of a local cigarmakers' union at Sioux City, Iowa, which union was a member of what is known as the Cigarmakers' International Union of America, a voluntary association composed of local unions organized in various parts of the country, brought this action to enjoin defendant, a corporation engaged in the wholesale grocery business in Sioux City, Iowa, from using or selling or affixing to cigar boxes a counterfeit of a label duly adopted and recorded by the aforesaid cigarmakers' union, and more particularly from selling a brand of cigars known as the "Rose Noble," made by one Meiskey, on the boxes of which was a counterfeit union label, and to recover damages and attorney's fees,

under section 5050 of the Code of Iowa.  That section, so far as material, reads as follows: "Every person, association or union adopting a label, trade mark or form of advertisement as specified in the preceding section, may proceed by action to enjoin the manufacture, use, display or sale of any counterfeit or imitations thereof."  There is no doubt that defendant was selling Rose Noble cigars in boxes upon which there was a counterfeit union label.  But it is contended that the court was in error in granting the permanent injunction, for the reason that, as soon as defendant was notified that the label was counterfeit, it stopped the sale of the cigars, and attempted to recover by exchange all that it had theretofore sold, and was in good faith attempting to take all cigars off the market which it had sold which bore a counterfeit label. There is evidence in support of this contention, but the testimony also shows that, after the defendant had been notified of the counterfeit character of the label, it filled two orders for the Rose Noble cigars by delivering them to purchasers thereof.  It is doubtless true that these orders had been taken before it was advised of the counterfeit character of the label, but it was its duty, after becoming aware of the fraud, to stop the delivery of goods bearing that label; and, as it failed to do so, plaintiff was justified in bringing this action, and was entitled to a decree of permanent injunction.  Defendant's good faith will not be allowed to operate as a shield as against its wrongful act in delivering goods contrary to law and in violation of an agreement, which it made with plaintiff and other representatives of the local union at the time the fraud was discovered, to take the cigars off the market, and to take up all that it had theretofore sold, so far as it was able to do so.  That it acted innocently is no defense.  *Saxlehner v. Siegel-Cooper Co.*, 179 U. S. 42, (21 Sup. Ct. Rep. 16, 44 L. Ed. 77).  The act, and not the intent, is what the law aims at in such a case.  Delivery of goods bearing a counterfeit

label, after the fraud was discovered and made known, is conceded, and the only excuse made is that defendant forgot to notify its shipping clerk not to fill any more orders for these goods. As the law prohibits the act, no matter what the intent, it is clear, we think, that the trial court committed no error in granting the permanent injunction.

Defendant further contends that the statute quoted does not apply to a case where defendant has no knowledge of the fraudulent character of the label. This, to our minds, is not a proper construction of the statute. But, if it were, the testimony shows delivery of goods bearing the counterfeit label after defendant had knowledge of its character. Even if there had been a completed sale, lacking delivery only, before defendant knew of the character of the label, nevertheless it would be its duty, when advised of its character, to prevent the delivery of the goods.

II. It is also argued that the law under which this action was brought is unconstitutional, in that the subject is not sufficiently expressed in the title. The title reads "An act to protect persons, associations and unions of working men, and others in their labels, trade marks and forms of advertising." Acts 24th General Assembly, chapter 36. This is sufficiently comprehensive to embrace all matters included in the act, although it contains no mention of profits or attorney's fees, and does not mention the kind of remedy provided. The matter is so fully covered by our previous decisions that further argument would be useless. *McAunich v. Railroad Co.*, 20 Iowa, 338; *Iowa Sav. & Loan Ass'n v. Selby*, 111 Iowa, 402; *Guarranty Sav. & Loan v. Aschermann*, 108 Iowa, 150.

III. The trial court allowed plaintiff $50 damages by way of profits. This was error. There was no evidence as to any profits made by defendant, and no showing that

plaintiff suffered any damages whatever. True, the statute authorizes the court to require defendant to pay to the person or association bringing the action the profits derived from the wrongful use of the forged label. But certainly no allowance may be made in the absence of proof as to the amount of such profits. *Qui tam* actions are recognized, to some extent, at least, by our laws; but in such cases a definite penalty is affixed, and the amount so fixed is awarded by way of punishment for the wrongful act. *Missouri v. Kansas City, F. S. & G. R. Co.* (C. C.) 32 Fed. Rep. 726. The statute can only be upheld on the theory that these profits are either compensatory or penal in character. If compensatory, plaintiff must show that he or the association he represents has suffered some damage; and there is no pretense of any such proof in this case. If penal, the penalty is not a fixed and definite sum, but is subject to proof, and, in the absence of evidence, cannot be recovered. These propositions are too plain for serious dispute. If defendant made no profits, no penalty by way of forfeiture thereof attaches. Appellant does not challenge the constitutionality of this provision of the law with reference to profits, and we have no occasion to consider that question. It is sufficient to say that the only theory on which profits may be allowed as a penalty is that this is a *qui tam* action; but, conceding this to be the proper theory, the court was not justified in allowing them, in the absence of evidence as to the amount thereof. *Hostetter v. Vowinkle*, 1 Dill. 329 (Fed. Cas. No. 6,714.) Moreover, to recover such profits, plaintiff must show that defendant acted in bad faith (*Saxlehner Case, supra,*), and there is no evidence thereof in the record.

IV. The statute also provides for the allowance of a reasonable attorney's fee, to be fixed by the court. The trial court allowed the sum of $250. This was more than was justifiable under the circumstances shown by this

record.   We think $150 was ample, and the amount allowed will be reduced to that sum.   The decree granting the permanent injunction is right, and it is affirmed, but the allowance of profits and attorney's fees was erroneous in the respects mentioned, and the cause will be remanded for correction in accord with this opinion.   Each party will pay one-half the costs of this appeal.—Modified and Affirmed.