ELLEN M. REGIS & another *vs.* H. A. JAYNES AND COMPANY & others.

Suffolk.   January 23, 1906. — March 7, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Trade Name.   Equity Jurisdiction.*

Where one having a right to the use of the word " Rex " as designating dyspepsia tablets has obtained in a suit in equity an injunction against the use by the defendant of the word " Rexall " to designate similar dyspepsia tablets, on filing a supplemental bill alleging that during the litigation the defendant has continued to sell dyspepsia tablets under the name " Rexall " he is entitled to an interlocutory decree ordering that the case be recommitted to the master and an account be taken of the defendant's profits on all goods so sold since the filing of the original bill.   Under such a decree the defendant must account for all profits on such sales made since the filing of the original bill whether the " Rexall " tablets were sold as goods of the plaintiff or not and whether or not the profits were due to the use of the trade name and it is immaterial whether any actual deception or mistake occurred, as all such sales were wrongful.   In such an accounting, if it appears that the defendant was carrying on a large business, and he has not shown that his general expenses were increased by the sale of " Rexall" goods, he is not entitled to any deduction for the expenses of carrying on his general business such as rent and clerk hire, and has a right to deduct only such expenses as would not have been incurred except for the sale of the " Rexall " goods.

*Semble,* that in this country, where an injunction has been granted restraining the defendant from using the trade name of the plaintiff, the court may give the plaintiff both damages and profits so far as is necessary to secure full compensation.   In the present case no question as to damages arose, the order to the master being limited to an account of profits.

Whether the force of R. L. c. 72, § 9, giving jurisdiction in equity to restrain the use or sale of counterfeits or imitations of a label recorded under § 7 of that chapter, has been affected by 21 U. S. Sts. at Large, c. 138, *quaere.*

SHELDON, J.   After the decision in this case, reported in 185 Mass. 458, a decree was entered enjoining the defendants from using the words " Rex " or " Rexall " in connection with the sale of preparations for the cure of dyspepsia, and ordering that upon the filing of a supplemental bill the case should be recommitted to the master for an accounting of profits since the filing of the original bill; and the first question which now comes before us is raised by the defendants' appeal from this decree.   The plaintiffs' supplemental bill avers that since the filing of the original bill the defendants have sold numerous boxes of dyspepsia tablets under the names " Rexall " and " Rexall Dyspepsia Tablets," and prays for an accounting of the plaintiffs' damages and of the defendants' profits therefrom.

The defendants' contention is that although the injunction was rightly issued under the previous decision, *Regis* v. *Jaynes,* 185 Mass. 458, yet no accounting of profits should have been ordered.   The facts which were then before the court were those stated in the master's first report.   They claim that it appeared by this report that they had acted in good faith, in ignorance of the plaintiffs' rights, until about a month before the filing of the bill; that there had been no actual interference with the sale of the plaintiffs' goods by reason of the similarity of the word " Rexall " to their trademark; that the plaintiffs had not suffered any actual monetary loss; and that it did not appear that the defendants had derived any advantage from the use of the trademark or good will.

The general principle that one who has shown that he is entitled to the exclusive use of a trademark may in equity recover from an infringer against whom he obtains an injunction the amount of the profits arising from the sale of goods upon which the trademark has been wrongfully used, is not denied by the defendants, and is abundantly sustained by authority.   *Saxlehner* v. *Eisner & Mendelson Co.* 138 Fed. Rep. 22.   *Oakes* v. *Tonsmierre,* 49 Fed. Rep. 447.   *Societe Anonyme* v. *Western Distilling Co.* 46 Fed. Rep. 921.   *Benkert* v. *Feder,* 34 Fed. Rep. 534.   *Atlantic Milling Co.* v. *Rowland,* 27 Fed. Rep. 24.   *Sawyer* v. *Kellogg,* 9 Fed.

Rep. 601. *Collins Co.* v. *Oliver Ames Corp.* 20 Blatchf. 542. *Stonebraker* v. *Stonebraker*, 33 Md. 252. *Avery* v. *Meikle*, 85 Ky. 435. *El Modello Cigar Manuf. Co.* v. *Gato*, 25 Fla. 886. *Graham* v. *Plate*, 40 Cal. 593. *Cartier* v. *Carlile*, 31 Beav. 292. And the same rule is applied to cases of unfair competition merely, as well as to cases of the infringement of a trademark properly so called. *Fairbank Co.* v. *Windsor*, 118 Fed. Rep. 96; *S. C.* overruled as to some points, 124 Fed. Rep. 200. *Walter Baker Co.* v. *Slack*, 130 Fed. Rep. 514. *Williams* v. *Mitchell*, 106 Fed. Rep. 168; *S. C.* 45 C. C. A. 265. *Lewis* v. *Goodwin*, 36 Ch. D. 1. Equity in such a case holds the infringer as trustee for the benefit of the rightful owner to the extent of the profits realized from the unlawful or wrongful business. Paul, Trade-Marks, § 326, and cases cited. And see *Tilghman* v. *Proctor*, 125 U. S. 136, 148; *Root* v. *Railway Co.* 105 U. S. 189, 214, 215. This account will indeed be taken upon equitable principles; and laches of a plaintiff, or the existence of any other facts which would make the application of the general rule inequitable will be a sufficient bar to its exercise. *McLean* v. *Fleming*, 96 U. S. 245. *La Republique Française* v. *Hegeman*, 116 Fed. Rep. 1021. *Drummond Tobacco Co.* v. *Addison Tinsley Tobacco Co.* 52 Mo. App. 10. *Millington* v. *Fox*, 3 Myl. & Cr. 338. *Magnolia Metal Co.* v. *Atlas Metal Co.* 14 Rep. Pat. Cas. 389. If it appears that the amount of damage to the plaintiff or of profits realized by the defendant is only insignificant, or that no actual damage has been sustained, the court may confine its relief to an injunction against any future infringement. *Liebig's Extract of Meat Co.* v. *Walker*, 115 Fed. Rep. 822. *Little* v. *Kellam*, 100 Fed. Rep. 353. *S. Howes Co.* v. *Howes Grain Cleaner Co.* 24 Misc. (N. Y.) 83. *Sanitas Co.* v. *Condy*, 4 Rep. Pat. Cas. 530. And this is specially true in cases in which a defendant is doing only what he has the general right to do, but equity requires that his right should be restricted so as not to interfere with some right which the plaintiff has acquired. *Ludington Novelty Co.* v. *Leonard*, 127 Fed. Rep. 155. *Baker* v. *Baker*, 115 Fed. Rep. 297. So, if the right to use a trademark is common to two or more separate holders, neither one of them will be allowed to recover the full profits realized by an infringer, but each can recover only according to his own interest. *Clark Thread Co.* v. *William Clark Co.* 11 Dick. 789, affirming *S. C.*

10 Dick. 658. But we do not find anything in the decisions above cited which would prevent the entry of the decree in question in the case at bar, for an account of the profits made by the defendants since the filing of the original bill. *Lawrence* v. *Hull*, 169 Mass. 250, was a bill under R. L. c. 72, § 5, and raised none of the questions now before us.

The defendants argue that in such a case as this, while an injunction may be granted to protect the rights of the plaintiffs in their trade name, yet the defendants should not be held for the profits which they have realized by selling articles bearing a name like the one used by the plaintiffs, in the absence of any fraudulent intention on their part, when it was found that they had acted in ignorance of the plaintiffs' rights, and it did not appear that substantial injury had been done to the plaintiffs before the filing of their bill. There is some conflict in the decisions ; but we think that the weight of modern authority is in favor of the rule that an account of profits will not be taken where the wrongful use of a trademark or a trade name has been merely accidental or without any actual wrongful intent to defraud a plaintiff, or to deceive the public. *Elgin National Watch Co.* v. *Illinois Watch Case Co.* 179 U. S. 665, 674. *Saxlehner* v. *Siegel-Cooper Co.* 179 U. S. 42. *Fairbank Co.* v. *Windsor*, 124 Fed. Rep. 200. *Stagg Co.* v. *Taylor*, 95 Ky. 651, 669. *Beebe* v. *Tolerton & Stetson Co.* 117 Iowa, 593. *North Cheshire & Manchester Brewery Co.* v. *Manchester Brewery Co.* [1899] A. C. 83, 86. *Moet* v. *Couston*, 33 Beav. 578. *Hodgson* v. *Kynoch*, 15 Rep. Pat. Cas. 465. And see 21 Encyc. Pl. & Pr. 770, and cases there collected.

But we do not think that the defendants are protected by this principle against the taking of the account here in question. The account is ordered to be taken only since the filing of the original bill, upon the charge made in the supplemental bill that during the litigation the defendants have persisted in their infringement. It cannot be said that this conduct on their part was in ignorance of the plaintiffs' rights ; they were at least put upon inquiry, and must be charged with knowledge of what they would have learned upon reasonable inquiry. Nor can it be said that their conduct since the filing of the bill was innocent or free from wrongful intent within the meaning of the rule which has

been stated. They chose after full notice and warning to persist in violating the plaintiffs' rights. If the facts as they afterwards were proved could have been made manifest to the court when the bill was filed, an injunction must have issued then. It does not lie in the defendants' mouths to say that conduct on their part which afterwards was proved to have been wrongful, and as to which they had either full knowledge, or the means of obtaining full knowledge of the facts, was either lawful or innocent. Their continued use was not, as in *Fairbank Co.* v. *Windsor*, 124 Fed. Rep. 200, in reliance upon the decision of a competent tribunal. Nor was there here any laches or acquiescence on the part of the plaintiffs, as in *McLean* v. *Fleming*, 96 U. S. 245. The defendants must be treated as having, after the filing of the original bill, that knowledge of the plaintiffs' prior right which was required in *Edelsten* v. *Edelsten*, 1 DeG., J. & S. 185. In *Ford* v. *Foster*, L. R. 7 Ch. 611, a case very similar to this, except that there was in that case considerable fault to be found with the conduct of the plaintiff, an order was made similar to that here in question.

We are of opinion that the decree appealed from was correct in ordering an account of the defendants' profits since the filing of the bill to be taken.

The defendants also have filed exceptions to the master's report made under this decree, and these we now proceed to consider.

The first and second exceptions are to the master's ruling that the defendants were liable to account for all profits made by them on all sales of " Rexall " goods made since the filing of the original bill, without regard to whether the " Rexall " tablets were sold as and for the goods of the plaintiffs or not, and that it was immaterial and the defendants were not entitled to show whether any actual deception or mistake had occurred or not. We cannot sustain these exceptions. In taking an account of the profits, the defendants should be charged with the entire profit made upon sales of the tablets under the guise of the infringing trademark. All these sales were wrongfully made, and the defendants must be held to account for the profits made upon all of them. *Saxlehner* v. *Eisner & Mendelson Co.* 138 Fed. Rep. 22. *Fairbank Co.* v. *Windsor*, 124 Fed. Rep. 200, and in 118

Fed. Rep. 96. *Sawyer* v. *Kellogg*, 9 Fed. Rep. 601. *Benkert* v. *Feder*, 34 Fed. Rep. 534. *Avery* v. *Meikle*, 85 Ky. 435. *El Modello Cigar Manuf. Co.* v. *Gato*, 25 Fla. 886. *Graham* v. *Plate*, 40 Cal. 593. *Lever* v. *Goodwin*, 36 Ch. D. 1. *Edelsten* v. *Edelsten*, 1 DeG., J. & S. 185. It may be that in *Avery* v. *Meikle*, *ubi supra*, the decision, as suggested by the defendants, should have been for the defendant; but we think that it correctly lays down the rule of damages.

But the counsel for the defendants argues that only those profits are to be accounted for which actually are shown to be due to the assistance derived from the plaintiffs' trademark. So far as this doctrine finds support in the decisions relied on, it seems to us to rest upon a confusion between damages and profits. It will appear by reference to the cases which already have been cited that in England in such cases a plaintiff is ordinarily required to elect between damages and profits, while it has been said in many cases in this country that equity, having once obtained jurisdiction, will, where it has granted an injunction, give both damages and profits, so far as this is necessary to secure full compensation. But in this case the order of reference was limited to an account of profits, no damages being allowed; and no question as to the assessment of damages comes before us.

The defendants further contend that the rule which has been adopted in patent cases should be applied here. This rule has been stated by Field, J., of the Supreme Court of the United States: "When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated. The rule on this head is aptly stated by Mr. Justice Blatchford in the court below: 'The patentee,' he says, 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the

entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.'" *Garretson* v. *Clark*, 111 U. S. 120, 121.   *Dobson* v. *Hartford Carpet Co.* 114 U. S. 439.   *Keystone Manuf. Co.* v. *Adams*, 151 U. S. 139.   *Elgin Wind Power & Pump Co.* v. *Nichols*, 105 Fed. Rep. 780.   *Kansas City Hay Press Co.* v. *Devol*, 127 Fed. Rep. 363. *Mosher* v. *Joyce*, 51 Fed. Rep. 441.   *Roemer* v. *Simon*, 31 Fed. Rep. 41.   *Tuttle* v. *Gaylord*, 28 Fed. Rep. 97.   But it seems to us that where, as here, a small article is sold with unlawful imitation of a trademark, it is rather to be treated as an undivided whole, and that as against the wrongdoer it must be taken to be a sale brought about by means of the unlawful trade mark.   The decisions cited in the former parts of this opinion go to the full length here stated.   If any analogy from patent cases is to be adopted, we ought rather to follow the rule that where the infringing machine or device derives its entire commercial value from the patented feature or improvement, then the patentee is entitled to the entire profits realized from its sale. `Crosby Steam Gage & Valve Co.* v. *Consolidated Safety Valve Co.* 141 U. S. 441, 454.   *Hurlbut* v. *Schillinger*, 130 U. S. 456, 471, 472.   *Manufacturing Co.* v. *Cowing*, 105 U. S. 253.

The defendants offered to prove, at the hearing before the master, after a statement had been made of their sales and of the amount paid by them for the goods and the amount received by them from the sales, that they had paid out various sums for rent, heat and light in the shops where they had made the sales, and for hire of clerks selling the goods, and for trading stamps given to the purchasers.   They admitted that they could not determine the exact amount so paid out, except by some method of apportionment; and they offered to introduce testimony to show that the expenses of conducting their general business were about twenty-five per cent of the gross sales, and that the expenses connected with the sale of these goods were as great as those connected with the average of their goods.   But the master ruled that the defendants were not entitled to any deductions from the profits to be accounted for on account of expenses of making the sales, except such expenses as they could prove would not have been incurred except for the sale of "Rexall" goods, and were not entitled to credit for any sums whatever for rent

of store, clerk hire and similar charges which probably would have been incurred if they had sold no Rexall goods. The defendants' remaining exceptions involve the question of the correctness of these rulings.

The defendants contend that their liability for profits cannot exceed the amount of the net profits which they have received, and that to determine this amount the actual expenses of carrying on their business must be ascertained, and a proper proportion of such expenses deducted from the gross profits of this department. They rely upon the case of *The Tremolo Patent,* 23 Wall. 518, in which it was held that in order to ascertain the profits made from sales of an organ with a patented attachment a ratable proportion of the general expenses of carrying on the business in effecting sales of organs should be deducted from the profits made from the patented attachment. The defendants in that case sold organs both with and without the patented attachment; and Strong, J. said that if in estimating profits every part of their business were not chargeable with a proportionate share of the expenses no part could be; and this would be an injustice which no one would defend. This decision was followed in *Walter Baker & Co.* v. *Slack,* 130 Fed. Rep. 514. There has not been uniformity of decision on this question, partly because the circumstances of the different cases have not been the same. See *Avery* v. *Meikle,* 85 Ky. 435; *Saxlehner* v. *Eisner & Mendelson Co.* 138 Fed. Rep. 22; *Societe Anonyme* v. *Western Distilling Co.* 46 Fed. Rep. 921; *Fairbank Co.* v. *Windsor,* 118 Fed. Rep. 96. The decision of the case last cited in 124 Fed. Rep. 200, does not touch upon this point. The defendants in the case at bar appear to have been carrying on a large business, and they did not offer to show that their general expenses have been at all increased by their taking up the sale of "Rexall" goods. Since the filing of the plaintiffs' bill, as we have already stated, their sale of these goods has been unlawful. To allow them to charge upon the gross profits from these goods any portion of the general expenses which were not increased thereby would be to allow them to derive a direct advantage from their own wrong. They were not precluded from proving and having allowed to them the amount of any expenses which were properly chargeable to these goods. Under the circumstances here existing, we do not think

that the rule of the case of *The Tremolo Patent, ubi supra*, should be applied.   See 28 Am. & Eng. Encyc. of Law, (2d ed.) 437, 438; Hopkins, Unfair Trade, 264; Paul, Trade-Marks, § 326, and the cases there cited.

We have not found it necessary to consider the effect of our own statute on this subject, (R. L. c. 72, § 9,) as counsel on both sides agree that, so far as it applies to this case, it merely re-affirms the common law rule.   We do not, however, intend to throw any doubt upon the validity of this statute, or to intimate that its force has been at all affected by the act of Congress of 1881, 21 U. S. Sts. at Large, c. 138.   See *Trade-Mark cases*, 100 U. S. 82, and the citations in 28 Am. & Eng. Encyc. of Law, (2d ed.) 434, and 21 Encyc. Pl. & Pr. 754.

The result is that the decree appealed from must be affirmed ; and the defendants' exceptions to the second report of the mas-ter must be overruled, and a final decree entered for the plain-tiffs accordingly.

*So ordered.*

*G. Cunningham*, for the defendants.
*A. P. Hardy*, for the plaintiffs.

