Hoffheimer, J.
This matter came on to be heard on the receivers’ motion, (a) to modify the decree heretofore entered herein; (6) on exceptions by receiver to the report of the special master in the matter of the accounting; and (c) on motion to refer back to the special master for correction; and also on application of the intervenor, Beekman, to modify the decree heretofore entered herein.
Taking up intervenor’s application first, the court it may be noted, is asked to strike out of said decree, certain operating expenses enumerated in said decree, and in the 6th finding thereof, for the reasons that none of said operating expenses are a proper charge to be borne by the business done by the receivers, in goods carrying the trade-mark “Vionana” and that none of said expenses were made necessary or were in any way increased, by the carrying on of the Vionana department, in connection with the other business carried on by the receivers, during the accounting period, and because none of said expenses, as matter of law, are properly chargeable against the business done by the receivers, in goods carrying the “Vionana” name.
Reliance for this application is placed on Regis v. Jaynes, 191 Mass., 245; Nelson v. Winchell, 203 Mass., 75, and certain other cases.
*115 If the rule of these cases is to be applied here, then obviously these receivers (unless it could be said they sustained the burden. and proved by that method to what extent the operating expenses of the entire business were increased by carrying on the “Vionana” department, which it is insisted they 'made no endeavor to do), must be held to account to intervenor on the gross, instead of on the net profits, as this court has heretofore decreed.
The rule which intervenor contends for, however, is an extreme one, and attention to the eases cited will show, that it is based on the principle that “the wrong-doer should not be permitted to derive a direct advantage from his own wrong” (Regis v. Jaynes, 252); and if by reason of his wrong the infringer causes confusion of property or of goods, he does so at his peril, and, if unable to separate the items, he must pay the penalty for his wrong.
All' the cases cited by intervenor show that the respective courts had uppermost in their minds the fact that the person against whom the rule was declared was a wrong-doer, who might derive some personal profit or advantage'by reason of his own wrong, unless such rule were invoked.
That it was this element of fraud or wilful wrong-doing that' called for the rule, is well illustrated by the language of the court in Benkert v. Feder, 34 Fed., 535 (cited by intervenor):
“One who deliberately and knowingly uses another’s trademark, commits a palpable and unmitigated fraud, for which there is no possible excuse.”
In Regis v. Jaynes, and in Nelson v. Winchell, the court an-, nounce, in substance, that the wrong-doer is not to be permitted directly or indirectly to profit by his own wrong; and the same reasons underlie Menendez v. Holt, 128 U. S., 514. However just such rule may be in a typical infringement case, where such element of intentional or wilful appropriation of another man’s property is present, and where there is possibility of personal profit or advantage in the wrong-doer, this case presents no such considerations. This was not a case of piracy nor wilful, deliberate. or intentional appropriation on the part of these receivers' *116 of intervenor’s property for purposes of private gain or otherwise. The receivers could not have derived any personal advantage, “directly or indirectly,” in what they did. These officers simply took over and attempted to run in good faith, and for the benefit of others, this vast, confused and complicated business, and as it was cast into their hands. This business included the “Vionana” department, ownership of which trade-mark intervenor subsequently claimed.
A long time prior to the receivership, intervenor himself, then in the employ of the Mihalovitch-Fletcher Company, (and he was in their employment practically up to the time of these proceedings,) suggested that the firm use this name, (see Beekman’s testimony, pp. 41, 42); and the firm did use it. - And the manner in which the name had been and was being used by the firm, the fact that it had spent many thousands of dollars in advertising it, as Us “Vionana” Department, reinforced by the further fact that it had in its possession the apparent ownership of title in the shape of the transferred stock-books and certificates of the Vionana Specialty Company, certainly all of these were circumstances which would have justified any reasonably prudent business men, especially after taking advice of counsel, as was done here, in believing, just as receivers believed, that this name, “Vionana,” was the property of the Mihalovitch-Fletcher Company, irrespective of the ultimate conclusion of this court, when it came' to try the question of title. All these circumstances, it seems to me, should, in fairness, be construed so as to relieve these receivers from all imputation of fraud or wilful wrong-doing, and so as to save the estate from the application of a rule, which, as I have endeavored to point out was intended and designed to prevent the -wrong-doer himself from personally benefiting or profiting by his own wrong. Even if these receivers, in continuing to use the name after Mr. Beekman gave'notice of ownership, -were in the wrong, I do not believe, under the circummstances as detailed, the creditors ought to be penalized for such error, and particularly where such error was partly; the result of intervenor’s own act in originally suggesting the use by. the firm of the name “Vionana” in connection with the Mihalovitch-Fletcher busness, and in otherwise acquiescing in a course of business *117 ■which gave the receivers reasonable grounds to believe they were the owners. In apparent conflict however with the cases cited by intervenors is the Tremolo patent case.
In the Tremolo patent case (23 Wall., 518), the court say:
“The defendants, vendors of organs generally, and selling sometimes organs having a patented invention consisting of a combination of what was called a ‘tremolo attachment’ with the organ; and selling sometimes organs without the attachment, were 'decreed guilty, in their sales of organs with the attachment, of infringing the complainant’s patent.
“Held: 1. That in the ascertainment of profits made by them from sales of organs with the tremolo attachment it was proper to let them prove the general expenses of their business in effecting sales of organs generally, and deduct a ratable proportion from the profits made by the tremolo attachment.”
And in the opinion of the court, it is stated:
“We can not see why the general expenses incurred by the defendants in carrying on their business, such expenses as store rent, clerk hire, fuel, gas, porterage, etc., do not concern one part of their business as much as another. It may be said that the selling a tremolo attachment did not add to their expenses, and therefore that no part of those expenses should be deducted from the' price obtained for such an attachment. This is, however, but a partial view. The store rent, the clerk hire, etc., may, it is true, have been the same, if that single attachment had never been bought or sold. So it is true that the general expenses of their business would have been the same, if instead of buying and selling one hundred organs, they had bought and sold only ninéty-nine. But will it be contended that because buying and selling an additional organ involved no increase of the general expenses, the price obtained for that organ above the price paid was all profit ? Can any part of the whole number sold be singled out as justly chargeable with all the expenses of the business? Assuredly no. The organ with a tremolo attachment is a single piece of mechanism, though composed of many parts. It was bought and sold as a whole, by the defendants. It may be said the general expenses of the business would have been the same if any one of these parts had been absent from the instrument sold. If, therefore, in estimating profits, every part is not chargeable with a proportionate share of the expenses, no part can be. • But such a result would be an injustice that no one would defend.”
*118 See also, Walter Baker & Co. v. Slack, 130 Fed., 520.
It will thus be seen that the court in the Tremolo patent case has laid down a rule more liberal than the one in Regis v. Jaynes and similar cases, and whether we consider the Tremolo patent case as an ordinary infringement case, or attempt to distinguish it as Sawyer, J., has endeavored to do, in Benkert v. Feder (supra, p. 535), it is sufficient authority for the rule heretofore announced by this court. If any equitable considerations prompted the rule in the Tremolo patent case, certainly such considerations are present here.
In view' of the foregoing, the court is of opinion that justice will be best subserved by adhering to the rule heretofore announced, and accordingly, intervenor’s motion to modify the decree in the particulars mentioned will be overruled.
With reference to the first specification in receivers’ motion to modify the decree I am of opinion that the amount of goods ‘ ‘ carrying private labels and no labels, ’ ’ and fixed in the decree at $15,567.64, should be increased, in accordance with the claim of receivers and according to the figures of Mr. Sibbald, the bookkeeper and afterwards expert. While it may be true that the shipping clerk may have appended some stock labels upon which appeared the name “Yionana,” I do not think that these cherries in bulk were sold as Yionana goods. It does not appear that the receivers intended or ordered that such labels be affixed, nor does it appear that these labels were descriptive in any way of the character of these bulk cherries. The mere fact that some shipping clerk may have attached such label without intending to do wrong hardly brought these goods within the spirit of the court’s ruling.
The decree should be altered or amended in the other specification also, and as set out in receivers’ motion.
Exceptions 1, 2, 3 and 4 of receivers to the finding of the special master go to the cost of cherries, but, as I understand it, after eliminating from consideration all other elements which had been agreed upon by the parties, such as cost of sugar used in processing, amount and valúe of sugar absorbed by raw fruit in processing, etc., the claim is, that the special master, in reaching his conclusion, erred on the amount, that is to say, the num *119 ber of pounds of pitted fruit in a case of six half gallons of whole cherries.
The evidence on this subject before the master was conflicting, but upon reading same and considering it, I am inclined to think his conclusion was a fair one and justified by the evidence. And this would appear the more so, in view of the practical experience of the receivers themselves while conducting the business. In the absence of any palpable or material errors, even though there may be some slight discrepancies, I am of opinion that these exceptions should be overruled.
Exceptions 5-14. According to the Sibbald Report (p. 9), it is practically conceded by intervenor that there is a difference of $314.81 on the profits on the' aggregate of “soda water goods” and ‘ ‘ grape juice ’ ’ sales in favor of the receivers, for which the master failed to give credit. Since this is conceded the exceptions will be allowed and the report will be referred back to be accordingly amended.
Exception 15 goes to the special master’s finding on gross profits. In view of what has been said herein on additional no label goods and additional returned goods, and Mr. Sibbald’s figures (p. 9), this exception will be allowed, and the report will be referred back to be amended in this respect.
Exception 16. Complaint is made that the special master wholly failed to consider, in ascertaining the profits, the items set forth in this exception. Of this amount, intervenor concedes that $2,325.65 is a proper charge, but contends that $920.47 of said items, representing cost and expense for freight, outbound and inbound, and bad debts, are not proper charge, upon authority of Nelson v. Winchell (supra). For reasons elsewhere stated, this court has not followed that case, and if it is not in error in so doing, and there being no dispute that the sum $920.67 was expense necessarily and actually incurred, this sum, together with $2,325.65, should have been taken into account by the master. The exception is, therefore, allowed, and the report will be referred back to be amended accordingly.
Exception 17. As part of the expense necessarily incurred, and in accordance with the reasons just stated, the master should have allowed the item of $266.82, being for salesmen’s salaries and ex *120 penses for taking orders previous to date of accounting for goods which were shipped during the period of accounting. Exception 17 is allowed in such particular, and the report will be amended accordingly.
Let a decree be prepared in accordance herewith.