Abraham (Abe) BAKER, Individually, and d/b/a Simmonds Upholstering Company, Defendant, Appellant,

v.

SIMMONS COMPANY, Plaintiff, Appellee.

No. 6137.

United States Court of Appeals First Circuit.

Dec. 26, 1963.

James M. Malloy, Boston, Mass., with whom Ralph Warren Sullivan and Malloy, Sullivan & Sullivan, Boston, Mass., were on brief, for appellant.

Francis A. Even, Chicago, Ill., with whom William E. Anderson, James J. Schumann and Anderson, Luedeka, Fitch, Even & Tabin, Chicago, Ill., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts entered March 19, 1963, awarding plaintiff-appellee, Simmons Company, the amount of $1,094,779.94 damages and counsel fees in an action involving trade-mark infringement and unfair competition.

Defendant-appellant, Abraham Baker, individually and doing business as Simmonds Upholstering Company, was found guilty in the United States District Court

for the District of Massachusetts of trade-mark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 (1958), and unfair competition.[1] The Simmons Company, a leading manufacturer of furniture possessing a "sleep feature," as well as a manufacturer of furniture for a variety of purposes and rooms, was found to be harmed by defendants' use of the name "Simmonds" in the conduct of their business of upholstering and re-upholstering furniture when use of such trade-name was likely to cause, and had caused, confusion with the plaintiff among ordinary purchasers. An injunction was issued against the defendants and the plaintiff was held entitled to damages and attorneys' fees. Simmons Company v. Baker, 200 F.Supp. 149 (D.Mass. 1961).

After this court affirmed the aforementioned judgment, Baker v. Simmons Company, 307 F.2d 458 (1st Cir. 1962), the district court referred plaintiff's claim for damages to a Master "to hear the parties and their witnesses, and to report to the Court his findings and conclusions of law thereon on the question of damages."

The Master held five days of hearings during which time four witnesses testified concerning the activities and financial transactions of the defendants. On January 22, 1963 the Master filed his report. He found the defendants jointly liable to the plaintiff in the total sum of $475,473.47. The district court doubled the Master's figure—an act of judicial discretion provided for in § 1117 of the Lanham Act—and included $143,833.00 counsel fees and expenses. Judgment was entered for the plaintiff in the amount of $1,094,779.94.

■ The first four points raised by appellant can be quickly settled. (1) We find no merit in appellant's argument that the award of damages should have been barred by laches and the Massachusetts statute of limitations. On the question of laches we defer to our prior opinion, Baker v. Simmons, supra, 307 F.2d at 466 n. 4 where that issue was negated. Also in that opinion we found defendants had relied on a fake document in order to establish rights in the "Simmonds" name extending back to 1899 and had, in fact, succeeded in deceiving the Boston Better Business Bureau and the Superior Court of the State of Rhode Island. The Massachusetts statute sought to be invoked by appellant saves from its operation causes of action which are fraudulently concealed. Mass.G.L. Ch. 260 § 12.

■■ (2) It is complained that the Master's disallowance of certain costs was improper. Here we are restrained by the principle that the findings of the Master are entitled to great weight and should not be disregarded unless clearly wrong. Parker v. Interstate Trust & Banking Co., 56 F.2d 792 (5th Cir. 1932). We find sufficient evidence to sustain the Master's findings.

■■ (3) Nor was it improper for the Master to award damages on the basis of gross sales of defendants. While some of the goods sold by defendants did not compete with those sold by plaintiff,[2] they were all sold under the name "Simmonds." "[A] trade-mark infringer is liable as a trustee for profits accruing from its illegal acts, even though the owner of the mark was not doing business in the consuming market where the infringement occurred." Blue Bell Co. v. Frontier Refining Co., 213 F.2d 354, 363

1. Also defendants and found guilty were Simmonds Upholstering Co., Inc., and New England Upholstering Co., Inc., both of which were solely owned by Baker, and Simmonds Sales System, Inc., in which Baker held the controlling shares.

2. About forty percent of defendants' gross sales could be considered as limited to the reupholstering field. The district court found that while defendant posed as a "reupholsterer," more than sixty percent of his gross sales was derived from the practice of "restyling" in the process of alleged "reupholstering." This "restyling," the district court found, was actually a subterfuge under which defendant Baker sold his customers new furniture under the representation that it was their old furniture "restyled." Simmons Company v. Baker, supra, 200 F.Supp. at 153.

(10th Cir. 1954) and cases cited therein. See also Admiral Corporation v. Price Vacuum Stores, 141 F.Supp. 796 (E.D. Pa.1956).

■ (4) Finally, there is more than sufficient authority for the allowance of counsel fees in Lanham Act actions where the defendant is found guilty of fraud and palming-off. Wolfe v. National Lead Company, 272 F.2d 867 (9th Cir. 1959); Keller Products v. Rubber Linings Corp., 213 F.2d 382 (7th Cir. 1954); Admiral Corp. v. Penco, Inc., 203 F.2d 517 (2d Cir. 1953).

■ The fifth point raised by appellant contains more substance. The appellant contends that it was error for the Master to enlist *ex parte* the assistance of an independent accountant to furnish him with profit and loss statements for all the defendants.

In his report the Master recited, *inter alia*, that one Ames, "a public accountant," was called by defendants but that he discarded Ames' testimony "as not being of probative value." He further stated that the profit and loss statements introduced by the defendants and prepared by one Anderson, "a self-employed auditor," were "incomplete" and that he discarded them "as being not too reliable."

"[I]n their place I caused an outstanding and competent firm of certified public accountants to furnish me with profit and loss statements prepared from the ledgers of the defendants which were also placed in evidence. I am adopting these latter profit and loss statements as being most reliable." In a subsequent letter to the court, supplementing this report, the Master stated that he had employed "outside help" only after making "decisions as to which items in my mind, were disallowable. The accountants only, for my own purposes, diagnosed the figures

which appeared in the books themselves, which were placed in evidence, and they only aided me in their proper allocations. I deem this procedure to be on the same basis as if one were to go to a dictionary for a definition or to any reference book for guidance."

This is not a statement that the Master had already "made all the determinations as to allocations of expenses and deductions" as the lower court stated in approving the report but only that he had decided upon general items or categories, and that he used the accountant to interpret the books for the express purpose of making the dollar and cent allocations therein.

The Master's conclusion in his report that he found his accountant's profit and loss statements the most "reliable" ones seems a far cry from equating them with "a dictionary * * * definitions or * * * reference book." [3] Whatever "help" the accountant furnished, it went beyond this. We believe it apparent that the accountant served as an ordinary expert witness to interpret the books. Even if the books were clear, which quite evidently they were not, appellant now finds itself bound by whatever the accountant told the Master, without opportunity to cross-examine him either as to his qualifications, his methodology, and the extent of his examination of the books or of his understanding thereof, or as to his actual conclusions. It may be that a Master may himself call his own witness,[4] but that he should call him in camera, and without right of cross-examination is, to say the least, a most irregular act.

The Master's unquestioned right to disregard any evidence which he thinks is of doubtful probative value, Aycrigg v. United States, 136 F.Supp. 244 (N.D. Cal.1954), does not enable him to sub-

---

3. By the rule of ejusdem generis it is assumed reference book to mean a book like a dictionary, containing matters, essentially undisputed, as to which one could properly take judicial notice. Cf. 9 Wigmore, Evidence § 2484 (3d ed. 1940) "The

trial judge * * * may consult any source of information or topics subject to *judicial notice.* * * * *"* (Ital. author's)

4. But see 5 Moore's Federal Practice ¶ 53.06, at 2953 (2d ed. 1951).

stitute evidence of his own without following ordinary judicial procedures.

Judgment will be entered vacating the judgment of the district court and remanding the case for further proceedings not inconsistent with this opinion.