**PHOENIX MANUFACTURING CO.,**
**Plaintiff,**

v.

**PLYMOUTH MFG. CO., Defendant.**
**Civ. A. No. 65-34-G.**

United States District Court
D. Massachusetts.
June 28, 1968.

Blair L. Perry, Hale & Dorr, Boston, Mass., for plaintiff.

Joseph Zallen, Boston, Mass., for defendant.

## OPINION

GARRITY, District Judge.

Plaintiff has brought an action for trademark infringement and unfair com-

petition. The amount in controversy exceeds the sum of $10,000. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1332 and 1338 and upon 15 U.S.C. § 1121. Defendant has counterclaimed that plaintiff's trademark registration is invalid and that defendant is entitled to registration of the trademark. Following a trial on the merits without a jury, the court makes the following findings of fact and conclusions of law:

### Findings of Fact

1. Plaintiff is a family-owned New Jersey corporation, having its principal place of business in Roselle, New Jersey. It has been engaged in the business of manufacturing and selling men's and boys' outerwear since 1932.

2. Defendant is a Massachusetts corporation, having its principal place of business in Boston, Massachusetts. It has been engaged in the business of manufacturing and selling raincoats since 1909 and has sold jackets and other items of outerwear for at least ten years.

3. Both plaintiff and defendant sell their products throughout the United States.

4. On February 29, 1940, plaintiff applied for registration of a trademark. On July 23, 1940 registration of the trademark was granted under registration number 379,754. The trademark consisted of the word SENTINEL in Old English typeface; next to the word, a full-length full-face picture of a sentinel wearing a conical helmet and carrying a staff in his right hand and a shield in his left hand; and the words "Sportswear of Merit" (disclaimed apart from the mark) in script. The registration issued to "Phoenix Mfg. Co., a corporation * * * located at Elizabeth, New Jersey" for "LEATHER AND CLOTH SPORT COATS AND SPORT JACKETS FOR MEN AND WOMEN."

5. Plaintiff has used the word SENTINEL since 1940 both in the form of the mark registered in that year and alone or in other combinations, usually in Old English typeface.

6. The 1940 registration expired in July of 1960, after twenty years, but plaintiff was not aware of expiration until sometime in 1961, when this was called to the attention of an officer of plaintiff who then instructed plaintiff's attorney to renew the registration. Sometime prior to October 30, 1961, plaintiff's attorney conducted a search for the SENTINEL trademark and on December 7, 1961 applied for a new registration of the mark. The application was published in the official Gazette of the Patent Office on November 27, 1962 and the new registration, which is currently in effect, issued on February 12, 1963, bearing registration number 745,-159.

7. Plaintiff has sold outerwear under the name SENTINEL continuously since 1940, applying that name to both jackets and various types of short coats. Since 1940 at least 50 per cent of the products sold by plaintiff each year have carried the SENTINEL name, and about 75 per cent of plaintiff's current sales are of items bearing that name. In addition, in 1960 or 1961 plaintiff sold a few hundred raincoats with liners, or "all-weather coats", under the SENTINEL name but otherwise has not sold, or is currently selling, this particular type of coat.

8. Approximately 70 per cent of plaintiff's sales consists of men's items and 30 per cent consists of boys' items. There is no evidence as to what percentage of either the men's or boys' items are labelled SENTINEL.

9. Plaintiff has used the SENTINEL name on labels sewn into its products, on catalogs and price lists distributed to the trade each year, and to a very limited extent in national trade and consumer advertising. For the years 1940 to 1961 plaintiff's advertising budget for SENTINEL items averaged about $1,000 per year. In 1967, plaintiff's advertising budget for SENTINEL items was approximately $3,000. Plaintiff's annual sales have increased from approximately $1,300,000 in 1964 to approximately $2,000,000 in 1967.

10. In January of 1961 defendant was considering several names, including the name Sentinel, for use on a new line of high-quality dacron and cotton all-weather coats. Defendant decided upon the name SENTRY after an investigation disclosed that no one else had registered that name as a trademark.

11. Defendant then began to plan an extensive advertising campaign around the theme of a British guardsman and a sentry box. Among other things, SENTRY labels were prepared consisting of a full-length full-face picture of a British guardsman wearing a bearskin hat and with his arms at his side; behind and to the side of the guardsman, a sentry box; the word SENTRY in block letters; and the words "Plymouth of Boston", "wash & wear", and a statement of the composition of the garment to which the label was to be attached. Also, in January 1961 a layout for consumer advertising was drawn up consisting in part of a full-face picture of a British guardsman depicted from the waist up; the guardsman was pictured wearing a bearskin hat, holding a staff in his right hand, and with a shield partly obscuring the left side of his body; on the shield were printed the words "Plymouth" and SENTRY, the latter in Old English typeface.

12. In March of 1961, Burberry's Ltd., a major British manufacturer of high-quality raincoats informed defendant that it had used the SENTRY name and theme for some of its coats and objected to defendant's use of the name.

13. By March of 1961 defendant had invested considerable effort and a large amount of money in preparing a "sentry" advertising campaign. A series of advertisements had been prepared, and promotion of the line had commenced. Because of Burberry's objections, defendant decided to abandon the name SENTRY and to adopt another name with similar connotations in order to make use of the artwork which had been completed and the promotional work which had begun. At this point defendant was under considerable time pressure to select another name and go forward with its advertising campaign without delay.

14. The defendant's search of the SENTINEL name was made after its decision not to use SENTRY. This search turned up plaintiff's expired 1940 registration and sometime subsequent to the search, in 1961, defendant obtained a copy of the expired registration.

15. Contrary to testimony offered by defendant, the court finds that through investigation defendant became aware of plaintiff's continued use of the SENTINEL mark but nevertheless decided to use the same mark itself because of its belief that plaintiff was not using the mark on raincoats and because of the time pressure upon it to make use of the artwork which had been prepared with respect to the SENTRY mark.

16. By the fall of 1961 national consumer magazines began to carry advertisements of defendant which were identical to the SENTRY paste-up with the exception that the word SENTINEL was substituted for the word SENTRY.

17. Defendant expended approximately $75,000 to $80,000 for advertising in the year 1961–1962. These expenditures remained at approximately the same level until the fall of 1964. There is no evidence as to how much of this expenditure was allocated to SENTINEL items. In these years, advertisements of the SENTINEL items were placed in various national consumer and trade magazines.

18. In spite of defendant's advertising, plaintiff had no actual knowledge of defendant's use of the SENTINEL name until April of 1964, when it came to the attention of an officer of the plaintiff. On April 30, 1964 plaintiff's vice president wrote to defendant objecting to defendant's use of SENTINEL and asking that defendant discontinue using the name. Correspondence between the parties and their attorneys followed until commencement of this action on January 11, 1965.

19. In late 1964 defendant greatly expanded its advertising, embarking upon the "biggest advertising campaign in its history." By the year 1966–67, defendant was expending approximately $175,000 in advertising, about forty to fifty per cent of which was devoted to SENTINEL items.

20. Defendant regularly advertised jackets in catalogs which displayed the SENTINEL name and advertised SENTINEL raincoats. In addition, in its 1965–1966 catalog, defendant described its jackets and short coats as being of "Sentinel quality"; also, defendant has regularly advertised SENTINEL "storm coats" (consisting of the basic SENTINEL coat with a zip-in pile lining and detachable pile collar).

21. Plaintiff's SENTINEL jackets and coats and defendant's SENTINEL all-weather coats have been sold through department stores and men's clothing stores and, in some instances, through the same store. An undefined percentage of plaintiff's SENTINEL sales is through wholesalers; it also sells SENTINEL items to discount stores. Defendant's SENTINEL items have generally sold at substantially higher prices than plaintiff's; defendant does not sell SENTINEL coats through wholesalers nor does it sell them to discount stores.

22. Finally, the court finds that defendant's use of the name SENTINEL on its products (a) creates a likelihood of confusion on the part of consumers as to whether or not the SENTINEL products of both parties come from a common source, and (b) is likely to dilute the distinctive quality of plaintiff's SENTINEL trademark.

*Conclusions of Law*

■ While there was a gap of approximately three years in which plaintiff's trademark was not registered, this fact does not of itself preclude plaintiff from obtaining relief for any infringement by defendant occurring after July of 1960 (the date of expiration of first registration) and before February 12, 1963 (date of issue of second registration). However, as to that period of time, plaintiff has no rights under the Lanham Act, 15 U.S.C. § 1051 et seq., but must rely upon its rights under the common law of unfair competition.[1] See, e.g., Maternally Yours, Inc. v. Your Maternity Shop, 2 Cir., 1956, 234 F.2d 538, 544. Consequently, the court will first consider the plaintiff's rights under the Lanham Act with respect to any infringement subsequent to the second registration and then, to the extent necessary, the plaintiff's rights under the common law of unfair competition.

I

■ The general operative provision of the Lanham Act applicable to the present case is, in relevant part, as follows:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive * * *

shall be liable in a civil action by the registrant for the remedies hereinafter provided. 15 U.S.C. § 1114(1)(a).

As the statute provides, and as abundant case law confirms,[2] the test of infringement is whether there is a likelihood of confusion. The question is one of fact,

---

1. The similarity of the law of trademarks to the law of unfair competition has been often noted. See, generally, Note, Developments in the Law—Trade-Marks and Unfair Competition, 68 Harv.L.Rev. 814 (1955). Judge Learned Hand believed that the Lanham Act was intended merely to codify the law of unfair competition. S. C. Johnson & Son, Inc. v. Johnson, 2 Cir., 1947, 175 F.2d 176, 178.

2. See, e. g., Sweetarts v. Sunline, Inc., 8 Cir., 1967, 380 F.2d 923, 927; Baker v. Simmons Co., 1 Cir., 1962, 307 F.2d 458, 461.

the determination of which involves a consideration of all the circumstances surrounding the parties' simultaneous use of the disputed mark. Durox Company v. Duron Paint Manufacturing Company, 4 Cir., 1963, 320 F.2d 882, 885. Fully realizing the dissimilarities between the products sold by the parties under the SENTINEL mark, the trade channels used by the parties, and the disputed markings themselves, the court nevertheless considers such dissimilarities to be of secondary importance and has found that the defendant's continued use of its SENTINEL mark is likely to cause confusion. Accordingly, the court concludes that, under 15 U.S.C. § 1116,[3] plaintiff is entitled to an injunction against such continued use by defendant.

Admittedly, this is not the usual case in which a large company, having incurred substantial expenses in advertising its trademark, seeks to prevent a smaller company from enjoying a "free ride" on that advertising. Nor is this a case in which an infringer has used a registrant's mark on an inferior product so as to damage the registrant's good will. Nevertheless, it is well settled that a registrant, regardless of its size or the quality of its product, has by virtue of its registration the right to the continued use of its mark free from the confusion that would result from another's use of its mark on similar products. Sweetarts v. Sunline, Inc., supra, 380 F. 2d at 928; Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 1944, 140 F.2d 618, 624. If the rule were otherwise, relatively small registrants whose marks were infringed by larger companies would be barred from effec-

tively expanding the use of their marks because of their identification with the larger infringers.

Various legal defenses raised by the defendant are, in view of the court's findings of fact, inapplicable. First, the court has found that plaintiff notified defendant of its rights in the SENTINEL mark as soon as it became aware of defendant's use of the mark; consequently, plaintiff's claim is not barred by laches.[4] Nor does defendant come within the defense set out in 15 U.S.C. § 1115(b) (5), which is limited to subsequent use of a mark "[which] was adopted without knowledge of the registrant's prior use"[5] because defendant decided to use the SENTINEL mark with knowledge of plaintiff's continued use. The same finding precludes defendant from coming within the doctrine of Avon Shoe Co. v. David Crystal, Inc., 2 Cir., 1960, 279 F.2d 607, 613, cert. denied, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed. 2d 224 which limits the rights of a first user against "an innocent junior user" or a junior user "acting in good faith." Though it is obvious from defendant's substantial advertising that it did not intend to take advantage of the good will which plaintiff had built up around its SENTINEL mark, defendant did adopt a mark which it knew was being used by another. In doing so, defendant lacked the innocence or good faith required by Avon Shoe.

Though plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116, it does not necessarily follow that plaintiff is entitled to an accounting under 15 U. S.C. § 1117.[6] As the Supreme Court

---

**3.** § 1116 empowers the court "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent Office."

**4.** In any event, laches is not available as a defense to one who deliberately infringes a trademark. See, e. g., Baker v. Simmons Co., supra, 307 F.2d at 466 n. 4.

**5.** In addition, § 1115(b) (5) is not applicable since the mark in this case has not become "incontestable."

**6.** A court has almost unlimited discretion in determining the proper monetary relief under § 1117:

When a violation of any right of the registrant of a mark registered in the Patent Office shall have been established in any civil action arising under this chapter, the plaintiff shall be en-

stated in Champion Spark Plug Co. v. Sanders, 1947, 331 U.S. 125, 131, 132, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386:

> Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381, states the rule governing an accounting for profits where a trademark has been infringed and where there is a basis for finding damage to the plaintiff and profit to the infringer. But it does not stand for the proposition that an accounting will be ordered merely because there has been an infringement. Under the Trade Mark Act of 1905, as under its predecessors, an accounting has been denied where an injunction will satisfy the equities of the case. * * * The same is true in case of unfair competition. * * * Here, as we have noted, there has been no showing of fraud or palming off. * * * Moreover, * * * the likelihood of damage to petitioner or profit to respondents due to any misrepresentation seems slight. In view of these various circumstances it seems to us that the injunction will satisfy the equities of the case.[7]

In spite of Champion Spark Plug Co.'s clear language, plaintiff relies upon Baker v. Simmons Co., 1 Cir., 1963, 325 F.2d 580, cert. denied 382 U.S. 820, 86 S.Ct. 49, 15 L.Ed.2d 67, to support its claim for an accounting. In Baker the court quoted approvingly the following language from Blue Bell Co. v. Frontier Refining Co., 10 Cir., 1954, 213 F.2d 354, 363:

> [A] trade-mark infringer is liable as a trustee for profits accruing from

its illegal acts, even though the owner of the mark was not doing business in the consuming market where the infringement occurred. 325 F.2d at 582.

Other circuits, in referring to the Baker case, place it in that line of cases which look upon a trademark as a property right of the registrant. Maier Brewing Company v. Fleischmann Distilling Corp., 9 Cir., 1968, 390 F.2d 117, 121; Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co., 2 Cir., 1965, 349 F.2d 389, 392. This line draws its ultimate authority from Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 1916, 240 U.S. 251, 259, 36 S.Ct. 269, 60 L.Ed. 629. Under the property right view, "the justification for an accounting is found in the principles of unjust enrichment traditionally applicable where property is used for profit without the owner's permission." Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co., supra, 349 F.2d at 392. The court in *Monsanto Chemical Co.* goes on to say that "if the [property right view] is carried to its logical conclusion, an accounting should be awarded automatically in most cases." Thus, to the extent that *Baker* must be read as adopting a strict property right view of trademark, it seems at variance with the Supreme Court's holding in *Champion Spark Plug Co.* However, in *Maier Brewing Company* and *Monsanto Chemical Co.*, both of which adopt a property right theory of trademarks, the courts have accommodated this theory with *Champion Spark Plug Co.* in recognizing that an accounting is not automatic. Maier Brewing Company v.

---

titled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. * * * In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court

may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

7. The language of the section of the Act of 1905 referred to in the excerpt from the Court's opinion is more favorable toward the theory of an automatic accounting than the language of § 1117. See Champion Spark Plug Co. v. Sanders, supra, 331 U.S. at p. 131 n. 7, 67 S.Ct. at p. 1139.

Fleischmann Distilling Corp., supra, 390 F.2d at 123; Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co., supra, 349 F.2d at 393.

The significant factual differences between *Baker*[8] and the present case are pertinent. In *Baker* a small infringer attempted to take advantage of substantial advertising by a larger registrant; in the present case the small registrant has not engaged in any significant advertising of which the large infringer could take advantage but, on the contrary, it is the large infringer which has advertised extensively. In *Baker* the infringer was using the registrant's mark on incomparably inferior goods thereby damaging the registrant's goodwill; in the present case, the infringer has used the SENTINEL mark on high-quality goods so that plaintiff's goodwill probably has not suffered. In short, in *Baker* it is clear that the registrant was substantially damaged by the infringement; in the present case there has been no evidence that the registrant has been damaged in any fashion (other than the loss of his exclusive use of the trademark) by the infringement. At this stage of the proceedings, it appears that an injunction will adequately repair the damage suffered by plaintiff.

■ Therefore, considering the facts of the *Baker* case, the court's language quoted above evidently refers to situations where damage to the registrant is obvious. The court in *Baker* did not have before it the question presently before this court—whether an accounting should be granted when there has been an infringing use of the mark on competing goods but there is no evidence of damage to the registrant. This latter question has been answered in the negative by *Champion Spark Plug Co.*

Courts and commentators[9] which have urged that accountings should be liberally granted have generally considered only the normal case of the large, high-quality registrant and the small, low-quality infringer. In such cases, where some damage to the registrant must be all but conceded, they have expressed concern that the registrant will be denied any form of monetary recovery, in the absence of an accounting, because of the difficulty in establishing damages. Further, they point out that to deny accounting in such cases may encourage infringement since an injunction against further use of a mark does not really penalize the infringer.

Assuming the validity of these points in the normal case, they have no validity when a small, non-advertising, registrant is suing a large, heavily advertising, high-quality infringer. In the instant case, it is far from clear that plaintiff has suffered any monetary damage as a result of defendant's infringement. On the contrary, though not conclusive on the issue of damages, it is significant that plaintiff's sales have increased during the period of infringement and it is at least reasonably inferable that some of that increase is due to a free ride which plaintiff has enjoyed on defendant's advertising. Furthermore, it is not true that defendant is not being penalized by being enjoined from further use of the SENTINEL mark. Defendant has invested heavily in establishing that mark and the effect of the injunction will be to eliminate the fruits of that investment. It is significant that in none of the cases cited by plaintiff in which a small registrant is suing a large infringer has an accounting been ordered, albeit the propriety of an accounting has not been specifically discussed. See Sweetarts v. Sunline, Inc., supra; Dwinell-Wright Co. v. National Fruit Product Co., su-

---

8. The facts in *Baker* are set out in the District Court's findings, 200 F.Supp. 149, and in the first opinion by the Court of Appeals, 307 F.2d 458.

9. See, e. g., Maier Brewing Co. v. Fleischmann Distilling Corp., supra; Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co., supra; Note, 66 Colum.L.Rev. 983 (1966).

pra; La Maur, Inc. v. Revlon, Inc., D. Minn., 1965, 245 F.Supp. 839.

The court does not condone defendant's intentional appropriation of plaintiff's mark but neither does it believe that plaintiff should be accorded a windfall by virtue of an accounting. Such would not be consistent with "the equities of the case" as set out by the Supreme Court in *Champion Spark Plug Co.*

## II

It remains to be determined whether, though plaintiff is not entitled to an accounting under the Lanham Act for infringement subsequent to the second registration, it should be granted an accounting under the common law of unfair competition for the entire period of infringement.[10] Preliminarily, it must be decided whether federal or state law is applicable to an unfair competition claim in which jurisdiction is based upon both 28 U.S.C. § 1332 and 28 U.S.C. § 1338(b). This much-debated[11] question appears to have been finally resolved in Flexitized, Inc. v. National Flexitized Corporation, 2 Cir., 1964, 335 F.2d 774, in which the court decided to apply state law, 335 F.2d at 781–782.

In arguing that Massachusetts law[12] favors an accounting in cases of unfair competition involving trademark infringement, plaintiff relies exclusively upon the following language in Regis v.

H. A. Jaynes & Co., 1906, 191 Mass. 245, 77 N.E. 774:

The general principle that one who has shown that he is entitled to the exclusive use of a trade-mark may in equity recover from an infringer against whom he obtains an injunction, the amount of the profits arising from the sale of goods upon which the trade-mark has been wrongfully used, is not denied by the defendants, and is abundantly sustained by authority. * * * And the same rule is applied to cases of unfair competition merely, as well as to cases of the infringement of a trade-mark properly so called. * * * Equity in such a case holds the infringer as trustee for the benefit of the rightful owner to the extent of the profits realized from the unlawful or wrongful business. 191 Mass. at 246, 247, 77 N.E. at 775.

But plaintiff has overlooked the following qualifying language:

This account will indeed be taken upon equitable principles; and laches of a plaintiff, or the existence of any other facts which would make the application of the general rule inequitable will be a sufficient bar to its exercise. * * * If it appears that the amount of damage to the plaintiff or of profits realized by the defendant is only insignificant, or that no actual damage has been sustained, the court may confine its relief to an injunction against any future infringement. 191 Mass. at 247, 77 N.E. at 775.

10. Plaintiff does not limit his claim for an accounting under the common law of unfair competition to the period during which plaintiff's mark was not registered. It has been decided that the Lanham Act does not preempt state law so as to preclude relief under the common law of unfair competition for infringement of a registered trademark. Flexitized, Inc. v. National Flexitized Corporation, infra, at p. 781, n. 4.

11. See Maternally Yours, Inc. v. Your Maternity Shop, supra, 234 F.2d at 540, 541

n. 1; Note, Developments in the Law— Trade-Marks and Unfair Competition, 68 Harv.L.Rev. 814, 878 (1955).

12. The question as to which state's law is applicable, if state rather than federal law is applicable, has not been considered by the parties. Because of the largely academic nature of this question, see Maternally Yours, Inc. v. Your Maternity Shop, supra, 234 F.2d at p. 545 (Clark C. J., dissenting), the court has assumed with plaintiff that Massachusetts law controls.

See also Summerfield Co. of Boston v. Prime Furniture Co., 1922, 242 Mass. 149, 153, 136 N.E. 396. This language brings *Regis* squarely within the general rule stated in *Champion Spark Plug Co.*[13] Accordingly, for the reasons stated in Part I of this opinion, an accounting is not warranted at this time.

## III

The trial of this case has been divided into two parts. The first part, which has been concluded, dealt with the question of liability; the court has reserved hearing on the question of damages or an accounting. Plaintiff has attempted to justify the absence of any evidence of damage by pointing to this bipartite structure and suggesting that evidence of damages would be irrelevant on the issue of liability. Plaintiff's suggestion is obviously correct. Nevertheless, on the basis of the evidence received at the trial on liability, plaintiff has sought an order for an accounting.[14] As already explained, an accounting does not follow automatically upon a finding of liability, or, more particularly, infringement; an accounting is not warranted if there is no evidence of damage to the registrant or common law owner of the mark. Consequently, though proof of damage is irrelevant on the question of liability, it is a prerequisite for an accounting. For this reason, the court at this time will not order an accounting.

A hearing will be held to determine the extent of the injury, if any, suffered by plaintiff as a result of defendant's infringement. If, at this hearing, plaintiff introduces proof that it has actually been injured, then the court will either award damages or, if the circumstances warrant, order an accounting by defendant.

13. It has been noted that the Supreme Judicial Court of Massachusetts has rarely granted monetary relief in cases of unfair competition involving trademark competition. Michelson, Massachusetts Law of Unfair Competition and Restatement 2d: Torts, 1964, 49 Mass.L.Q. 131, 139.

14. It is interesting to note that though plaintiff's complaint prays for both damages and an accounting, plaintiff's proposed order makes no mention of a further hearing on damages but is limited, insofar as monetary relief is concerned, to an order for an accounting.